UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LUIS REYES #561290                              CIVIL ACTION NO. 17-cv-1094

VERSUS                                          CHIEF JUDGE HICKS

JERRY GOODWIN, ET AL                            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Luis Reyes ("Plaintiff") is a self-represented prisoner who is confined at the David Wade Correctional Center ("DWCC"). He filed this civil rights action against Warden Jerry Goodwin, Deputy Warden Angie Huff, and Nursing Director Paula Millwee based on claims that he was not afforded proper medical care. Both Plaintiff (Doc. 35) and Defendants (Doc. 34) have filed motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's motion be denied and that Defendants' motion be granted.

**Summary Judgment Evidence**

**A. Plaintiff's Evidence**

Plaintiff's motion is supported by his declaration made pursuant to 28 USC § 1746. He made the declaration under penalty of perjury, so it constitutes competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003). Plaintiff states that he made a sick call in October 2016 because of a boil in his throat and continuous nose bleeds. He received no medical treatment. Declaration, Doc. 35-2, ¶ 2. He suffered for

several days with pain in his throat, nose bleeds, and vomiting, and he could not ingest food. He "made emergency" but was denied medical treatment because he did not submit a sick call request. ¶ 3.

Plaintiff made an emergency sick call in November 2016 for extreme pain. Dr. Fuller examined him, found a superficial abrasion, and refused to provide pain medicine. ¶ 4. From December 2016 through April 2017, Plaintiff made several sick calls for pain in his stomach and chest, but he received no treatment. ¶¶ 5-6.

Medical personnel prescribed prescription medication in May 2017, but Plaintiff never received the medication. The same thing happened in June 2017. ¶ 9. Plaintiff continued to lose weight because he could not digest his food, but he did not seek medical help because his past attempts had failed to gain treatment. When he sought treatment in August 2017, he was run out of the infirmary and denied medicine. ¶¶ 10-11. Plaintiff made three emergency sick calls in September and October 2017 because he was vomiting blood. Medical staff denied him treatment and declined to refer him to an outside physician. ¶¶ 12-14.

Plaintiff wrote DOC Secretary James LeBlanc letters in October and November 2017. He complained that he was spitting up blood, had a lump in his throat, and had lost his appetite, yet received no treatment from the medical staff. LeBlanc did not reply. ¶¶ 15 & 17.

Dr. Fuller examined Plaintiff in October 2017 and prescribed Prilosec for 30 days. Plaintiff begged Fuller to send him to an outside hospital, but Fuller ignored the request. ¶ 16. Plaintiff was eventually taken to the E.A. Conway hospital for evaluation in November

2017.  He returned to E.A. Conway in December 2017 for the results of his examination. Plaintiff states that a doctor there "informed me that I have stomach cancer and bacteria from my stomach to my throat."  The doctor also told Plaintiff that he was scheduling Plaintiff for surgery, but medical authorities at DWCC would not allow the surgery to be performed.  ¶ 18.  An E.A. Conway physician later recommended that Plaintiff be referred to an ear, nose and throat specialist, but Plaintiff was never referred.  ¶ 19.  Plaintiff asserts that the prolonged denial and delays in his care caused "the cancer to spread in my side, chest and throat causing severe pain and bad cough."  ¶ 20.

### B. Defendants' Evidence

Defendants' motion is supported by a certified copy of Plaintiff's medical records and an affidavit from Paula Millwee, in which she summarizes and explains the records. Millwee testifies that she is a registered nurse and is the director of nursing at DWCC.  Her duties include scheduling physician appointments and overseeing the nursing staff at the prison.

Director Millwee testifies that Plaintiff's records show that he arrived at DWCC from another prison in late 2015.  His early records show that he reported a number of episodes of spitting up blood.  He was examined, though it was difficult at times due to a language barrier, and he was given Zantac to treat gastroesophageal reflux disease.  Several medical visits are noted for 2016 at which Plaintiff complained that he was throwing up blood or having difficulty getting food to go down.  He was at times referred to an M.D. Some of the medical notes state that staff did not see any blood in Plaintiff's cell or toilet to back his complaints.  It was noted in October 2016 that Plaintiff had progressive weight

loss, and he complained of a problem with a mass inside his throat. Plaintiff was referred to an M.D. and examined in November 2016. Plaintiff repeatedly pointed to his right neck area as though he felt a mass or area of discomfort there, but no abnormal masses or nodules were palpable. The physician's impression was that the problems were probable secondary trauma. Plaintiff was prescribed Amoxil, Mucinex, and saline nasal spray.

Plaintiff continued to complain of spitting up blood, nose bleeds, sore throat, and sinus problems between December 2016 and October 2017. Medical staff saw Plaintiff more than a dozen times during that period for his complaints, but he was often not provided any medication or particular treatment. He reported on some occasions that he had not been getting his GERD medication. Medical notes indicate that Plaintiff was given "numerous lab tests" over the past couple of years.

Plaintiff was taken to University Health in Monroe (also known as E.A. Conway) in November 2017 for an initial consultation. A barium swallow test was performed, and the results were severe gastroesophageal reflux without stricturing or ulceration. DWCC medical notes state that Plaintiff returned from University Health with no orders noted at that time. Plaintiff returned to University Health in January 2018 for complaints of chest pain and acid reflux disease. He underwent an EGD in February 2017 to evaluate his complaints. He returned from one visit with new orders to start on Colace (a laxative) and Metamucil. Notes state that referral to an ENT would be faxed when available. The last medical note, in February 2018, showed that Plaintiff was seen by a physician regarding his severe GERD that had seen no relief from medication. An ENT referral was ordered for septal deviation.

**The Eighth Amendment and Medical Care**

The Eighth Amendment rights of prisoners are violated when prison officials demonstrate deliberate indifference to serious medical needs, which constitutes an "unnecessary and wanton infliction of pain." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n. 12 (5th Cir. 2006). Deliberate indifference will be found only where the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S.Ct. 1970, 1984 (1994). Neither unsuccessful medical treatment, mere acts of negligence, nor medical malpractice give rise to deliberate indifference. Gobert, 463 F.3d at 346.

Much of Plaintiff's complaint is that there was delay in providing him care. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In assessing all forms of deliberate indifference, "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Gobert, 463 F.3d at 346 n.24.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

This case presents the typical situation in which the defendants have moved for summary judgement, but it also presents the less common motion by a plaintiff for summary judgment. Plaintiff, to prevail on his motion, must present evidence that would entitle him to judgment as a matter of law if it went uncontroverted at trial. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d. 1257, 1264 (5th Cir. 1991); Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 146 (3d Cir. 1999). All facts and inferences are viewed in the light most favorable to the defendant, and all reasonable doubts are resolved in the defense's favor. Puckett v. Rufenacht, Bromagen & Hertz, Inc., 903 F.2d 1014, 1016 (5th Cir. 1990). If factual issues or conflicting inferences exist, the court is not to resolve them; rather, summary judgment must be denied. Id.

**Warden Goodwin**

Warden Goodwin and the other defendants challenge Plaintiff's claims on the merits and they assert a defense of qualified immunity. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Thus, a prisoner must show that a warden or other supervisor was personally involved in the acts that deprived the prisoner of his constitutional rights. Thompson v. Upshire County, 245 F.3d 447, 459 (5th Cir. 2001). Each defendant's entitlement to immunity must be examined separately. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007).

Warden Goodwin moves for summary judgment on the grounds that there is no showing that he had any personal involvement in the events complained of by Plaintiff. Nothing in Plaintiff's summary judgment evidence contends that Warden Goodwin was personally involved in Plaintiff's medical care or was even aware of the facts alleged. Given the absence of evidence to create a genuine dispute of material fact as to whether Goodwin could be liable, he is entitled to summary judgment with respect to all claims against him.

**Angie Huff**

Angie Huff is a deputy warden at DWCC. Plaintiff alleges that he filed an administrative grievance regarding his medical care. The response to the grievance was prepared by Director Millwee, and it was verified by Deputy Warden Huff. There are no other allegations regarding Ms. Huff, and she is not mentioned in Plaintiff's declaration in support of summary judgment.

Ms. Huff may not be held liable based solely on her action in connection with the processing of Plaintiff's grievance.  Plaintiff "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).  Even a contention that a warden has "signed off on numerous step one grievances" is not sufficient to establish that she was personally involved in the underlying misconduct.  Perez v. Davis, 690 Fed. Appx. 200, 201 (5th Cir. 2017).  There is no evidence that Ms. Huff was personally involved in any decisions related to the medical care provided to Plaintiff.  She is entitled to summary judgment with respect to all claims against her.

**Paula Millwee**

Plaintiff alleges in his amended complaint (Doc. 7, ¶ 12) that Nursing Director Millwee prepared the response to his grievance and stated that his medical needs were being appropriately addressed.  The complaint does not appear to mention Millwee anywhere else.  Millwee states in her affidavit that she is the director of nursing, but her supervisory position does not render her liable for all claims against nurses or physicians at the prison.

Supervisory officials cannot be held liable under Section 1983 for the actions of subordinates on any theory of vicarious liability.  Alton v. Texas A&M Univ., 168 F.3d 196, 200 (5th Cir. 1999).  And the Fifth Circuit has affirmed summary judgment for a medical supervisor at DWCC who was accused of improperly dismissing an inmate's claims that nurses were denying proper care.  The Court stated that the supervisor "cannot

be held liable under § 1983 based on the actions of his subordinates." <u>Samuels v. Huff</u>, 344 Fed. Appx 8, 11 (5th Cir. 2009).

A review of the lengthy medical records submitted by Defendants shows a number of signatures by other nurses or physicians who were involved in Plaintiff's care. Plaintiff has not pointed to any particular actions or decisions by Millwee that allegedly resulted in deliberate indifference to his serious medical needs. It is not clear whether Millwee had any personal involvement in Plaintiff's care beyond addressing his grievance. She is, therefore, entitled to summary judgment with respect to all claims against her.

**Conclusion**

Neither Plaintiff nor Defendants filed an opposition to the others' motion for summary judgment. The court has elected in this case to treat each motion as both a motion and an opposition to the competing motion. When the materials are viewed in that manner, Plaintiff has not satisfied his burden of being entitled to summary judgment with respect to the liability of any defendant. Defendants, on the other hand, have shouldered their individual burdens and are entitled to summary judgment. It is worth noting that Plaintiff testifies that he was told he has stomach cancer, but that diagnosis does not appear to be included in any of his medical records. In any event, each defendant has specifically challenged Plaintiff's ability to present evidence that could establish their liability, and Plaintiff has not created a genuine dispute of material fact with respect to any of the three named defendants.

Accordingly,

It is recommended that Plaintiff's Motion for Summary Judgment (Doc. 35) be denied and that Defendants' Motion for Summary Judgment (Doc. 34) be granted and all claims be dismissed against Jerry Goodwin, Angie Huff, and Paula Millwee.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of April, 2019.



Mark L. Hornsby
U.S. Magistrate Judge